# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CARLA HOSKINS, *et al.*,**

    **Plaintiffs,**

v.

**LIBERTY MUTUAL GROUP, INC.,**

    **Defendant.**

:

:

:

**Case No. 2:19-cv-5441**
**Judge Sarah D. Morrison**
**Magistrate Judge Kimberly A. Jolson**

## OPINION AND ORDER

Currently pending before the Court are two motions in this insurance coverage dispute. First is Defendant Liberty Mutual Insurance Company's[1] Motion for Summary Judgment on all claims of Plaintiffs Carla Hoskins and Ray Bloodwyn. (ECF No. 16). Plaintiffs responded to that Motion and filed their own Cross Motion for Summary Judgment on Liability Only for All Claims in Plaintiffs' Complaint as well as on Liberty's Counterclaim for declaratory judgment. (ECF No. 21). Liberty then filed a combined Reply in Support of its Motion and Memorandum in Opposition to Plaintiffs' Cross-Motion. (ECF No. 22). Both Motions became ripe for consideration when Plaintiffs filed their Reply in Support of their Cross-Motion. (ECF No. 23).

---

[1] Plaintiffs' Complaint names Liberty Mutual Group, Inc. as the sole Defendant. (ECF No. 3). Liberty Mutual's Answer indicates that the proper Defendant is Liberty Mutual Insurance Corporation. (ECF No. 4). While no motion was filed to correct this alleged error, Defendant captioned its Motion as being filed by Liberty Mutual Insurance Corporation.

## I. STATEMENT OF THE FACTS

Plaintiffs Carla Hoskins and Ray Bloodwyn, along with non-party Larry Hoskins, co-own the property located at 7452 County Road 121 in Fredericktown, Ohio (the "Property"). (ECF No. 21-1, Hoskins Decl. ¶¶ 2, 3, PageID 432; ECF No. 21-2, Bloodwyn Decl. ¶¶ 2, 3, PageID 435). At all times relevant to this case, Mr. Bloodwyn lived at the Property. (ECF No. 21-2, Bloodwyn Decl. ¶ 4, PageID 436). The Property was destroyed by a fire on December 9, 2016. (ECF No. 21-1, Hoskins Decl. ¶ 18, PageID 432).

### A. The Insurance Policies

An application for homeowner's insurance was made to Liberty identifying Carla Hoskins as the insured in October 2014 ("the 2014 Application"). (ECF No. 16, Ex. A, PageID 570-572.) The Application was signed by Ms. Hoskins and Mr. Bloodwyn; both signatures are dated October 24, 2014. (*Id.*) This application states a policy number (H35-281-213275-40) and states that the policy would be effective from October 14, 2014 to October 14, 2015. (*Id.*) Effective October 26, 2014, Liberty issued an insurance policy that identified only Ms. Hoskins as the insured; as reflected on the application, this policy was given policy number H35-281-213275-40 and had a policy period of October 14, 2014 to October 14, 2015 (the "Hoskins Policy"). (ECF No. 21-4, PageID 442-445).

The parties tell different stories about what happened next. According to Plaintiffs, in February 2015, Liberty advised Ms. Hoskins that the named insured must reside at the Property – meaning that she could not be the named insured and a new policy had to be issued to Mr. Bloodwyn as the only person residing there.

2

(ECF No. 21-1, Hoskins Decl. ¶ 13, PageID 432). Mr. Bloodwyn says he then spoke to a Liberty representative and agreed to have a policy issued in his name, with him as the named insured. (ECF No. 21-2, Bloodwyn Decl. ¶ 8, PageID 436). Liberty, on the other hand, says that the homeowner's policy was "re-issued . . . to list only Ray Bloodwyn as the Named Insured" at Plaintiffs' request in February 2015. (ECF No. 16-1, Marrangoni Aff. ¶ 7, PageID 575).

Regardless of how the change happened, the Hoskins Policy was cancelled by Liberty effective February 11, 2015. (ECF No. 21-4, Ex. 4, PageID 441). Policy Number H35-281-247968-40 was then issued for the Property identifying only Mr. Bloodwyn as the insured; this policy had a different premium, a new policy number, and a different policy period (the "Bloodwyn Policy"). (ECF No. 21-6, Policy Declarations, PageID 450; ECF No. 21-2, Bloodwyn Decl. ¶ 9, PageID 436.) Mr. Bloodwyn did not complete a new application for this policy. (ECF No. 21, Memo Contra, PageID 419; ECF No. 21-2, Bloodwyn Dec. ¶¶ 12-14). The Bloodwyn Policy was subsequently renewed for a policy period of February 11, 2016 to February 11, 2017. (ECF No. 21-7, Policy Declarations, PageID 454; ECF No. 21-8, Renewal Notice, PageID 501-503).

### B. Rescission of the Bloodwyn Policy

The 2014 Application contained eleven "yes" or "no" questions. (ECF No. 16-1, Ex. A, PageID 571). Relevant here, Question 8 asked: "Have you had any insurance declined, canceled or non-renewed in the past 12 months" to which the response was a checkmark in the box for "No." (*Id.*) The Application then warned against false statements:

3

> Signing this form does not bind the applicant to complete the insurance, but it is agreed that this form and the ***answers provided by you to questions as part of the application process shall be the basis of the contract should a policy be issued***. In the event that any material misrepresentations, omissions, concealment of facts and/or incorrect statements are made by or on behalf of the insured during the application process, we may exercise whatever legal remedies may be available to us under the laws and regulations of this state.

(*Id.* at PageID 572 (emphasis added)).

The parties did not submit a copy of the Hoskins Policy, only the Hoskins Policy Declaration (*see,* ECF No. 21-4, PageID 444-445), but the Bloodwyn Policy as renewed[2] contained a warning regarding false statements:

> ***The application for this policy*** is incorporated herein and made a part of this policy. ***When we refer to the policy, we mean this document, the application, the Declarations page, and any applicable endorsements.*** The Insured agrees that all of the statements in the application for this policy are his or her statements, and constitute warranties. The Insured agrees that this policy is issued in reliance upon the truth of the Insured's warranties in the application. If it is determined that any warranty made in the application is incorrect, this policy shall be void ab initio (void back to the date of inception) upon return of the policy premium.

(ECF No. 16-1, Bloodwyn Policy, PageID 614 (emphasis added)).

After Mr. Bloodwyn filed an insurance claim for the fire in December 2016, Liberty investigated. During that investigation, Liberty learned that Mr. Bloodwyn had a prior homeowner's insurance policy that was cancelled for non-payment by Patrons Buckeye Mutual Insurance Company on August 2, 2014, less than three months before the 2014 Application was submitted. (ECF No. 16-1, Bartlett Aff. ¶

---

[2] The parties did not submit the complete Bloodwyn Policy for the original policy period of February 11, 2015 to February 11, 2016.

4

5, PageID 630). Liberty determined that this meant that the Plaintiffs had made a false statement on the 2014 Application and rescinded the Bloodwyn Policy, returning premium payments of $2,485.00. (*Id*. ¶¶ 6-7).

Plaintiffs acknowledge that Mr. Bloodwyn was previously insured by Patrons Buckeye Mutual Insurance Company from June 30, 2014 to August 2, 2014. (ECF No. 16-1, Interrogatory Response No. 11, PageID 660). That insurance policy was canceled for non-payment of premium. (ECF No. 16-1, Patrons Buckeye Policy, PageID 674).

On the grounds that it had rescinded "the Policy," Liberty denied Plaintiffs' insurance claim for the fire on February 3, 2017. (ECF No. 21-9, Recission Letter, PageID 508; ECF No. 16-1, Bartlett Aff. ¶ 7, PageID 630).

### C. Procedural Background

On November 14, 2019, Ms. Hoskins and Mr. Bloodwyn filed suit against Liberty in the Court of Common Pleas of Knox County, asserting claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, Bad Faith, and Unfair Trade Practices. (ECF No. 3).

Liberty timely removed the action to this Court pursuant to 28 U.S.C. § 1441(a) on the grounds that there is complete diversity of citizenship; Plaintiffs are citizens of Ohio, Liberty is incorporated in and maintains its principal place of business in Massachusetts, and the amount in controversy is more than $75,000 exclusive of costs and interest. (ECF No. 1). Liberty then filed its Answer and asserted a Counterclaim for Declaratory Judgment. (ECF No. 4). Summary

5

Judgment briefing followed.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388–89 (6th Cir.1993). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the non-moving party).

6

### B. The Breach of Contract Claim

The Court begins with a review of the rules of insurance policy interpretation. Under Ohio law,[3] insurance contracts are construed like any other written contract. *Scott v. Allstate Indem. Co.*, 417 F. Supp. 2d 929, 932 (N.D. Ohio 2006). "The court's role in interpreting a contract is to give effect to the intent of the parties." *Fujitec Am., Inc. v. AXIS Surplus Ins. Co.*, 458 F. Supp. 3d 736, 743 (S.D. Ohio 2020) (Litkovitz, M.J.) (quotation omitted). To give such effect, "[c]ontract terms are generally to be given their ordinary meaning when the terms are clear on their face," and courts must "apply the plain language of the contract when the intent of the parties is evident from the clear and unambiguous language in a provision." *CoMa Ins. Agency v. Safeco Ins. Co.*, 526 F. App'x 465, 468 (6th Cir. 2013) (citations omitted). *See also Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997). "Where provisions of a contract of insurance are reasonably susceptible of more than one interpretation, they will be construed strictly against the insurer and liberally in favor of the insured." *King v. Nationwide Ins. Co.*, 35 Ohio St.3d 208, 208, 519 N.E.2d 1380 (1988), syllabus.

Liberty's Motion raises two grounds for summary judgment on Plaintiffs'

---

[3] "[F]ederal courts sitting in diversity 'apply state substantive law and federal procedural law.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 417, 130 S. Ct. 1431, 176 L. Ed. 2d 311 (2010) (quoting *Hanna v. Plumer*, 380 U.S. 460, 465, 85 S. Ct. 1136, 14 L. Ed. 2d 8 (1965)). The Court applies the substantive law of the state in which the Court sits. *Perry v. Allstate Indem. Co.*, 953 F.3d 417, 421 (6th Cir. 2020) (citation omitted).

7

breach of contract claim. First, Liberty argues that the breach of contract claim fails because Liberty properly rescinded "the Policy." (ECF No. 16, PageID 279-283). Second, Liberty alternatively argues that this litigation was untimely filed resulting in Plaintiffs' claims being barred as a matter of law. (*Id.* at PageID 283-284). In response and in their Cross-Motion on their own claims as to liability only and on Liberty's counterclaim, Plaintiffs argue that the Hoskins Policy and the Bloodwyn Policy are two different policies with only the Bloodwyn Policy in effect at the time of the fire. Plaintiffs additionally argue that Mr. Bloodwyn did not make any false statements or misrepresentations for his policy such that Liberty's rescission was improper. (ECF No. 21, PageID 423-429). Plaintiffs also argue that this litigation was timely filed. (*Id.* at PageID 429).

The resolution of these arguments turns on the threshold question of whether the Hoskins Policy and the Bloodwyn Policy are two separate policies or whether they are the same policy. Applying the plain language of the contracts, the Court concludes that the Hoskins Policy and the Bloodwyn Policy are in fact two separate policies. The undisputed facts that lead to this conclusion are as follows:

### **The Hoskins Policy**

a. Liberty issued an insurance policy naming Ms. Hoskins as the insured under Policy Number H35-281-213275-40 for the Policy Period of October 14, 2014 to October 14, 2015. (ECF No. 21-4, Policy Declarations, PageID 444; ECF No. 21-3, Insurance Application).

b. The premiums for Policy Number H35-281-213275-40 were $923 for 12 months and had the following coverage limits:

8

| Section I Coverages | LIMITS |
|---|---|
| A. Dwelling with Expanded Replacement Cost | $ 280,500 |
| B. Other Structures on Insured Location | $ 28,050 |
| C. Personal Property with Replacement Cost | $ 210,380 |
| D. Loss of Use of Insured Location | Actual Loss Sustained |

    (ECF No. 21-4, Policy Declarations, PageID 444).

  c. Policy Number H35-281-213275-40 was cancelled effective February 11, 2015. (*Id.*, PageID 441).

**The Bloodwyn Policy**

  a. Liberty issued an insurance policy naming Mr. Bloodwyn as the insured under Policy Number H35-281-247968-40 for the initial policy period of February 11, 2015 to February 11, 2016. (ECF No. 21-6, Policy Declarations, PageID 448-50).

  b. The premiums for the first year for Policy Number H35-281-247968-40 were $877 and had the following coverage limits:

| Section I Coverages | LIMITS |
|---|---|
| A. Dwelling | $ 275,400 |
| B. Other Structures on Insured Location | $ 27,540 |
| C. Personal Property with Replacement Cost | $ 192,780 |
| D. Loss of Use of Insured Location | $ 55,080 |

  c. All correspondence between Liberty and Mr. Bloodwyn about the fire and the rescission reflects Policy Number H35-281-247968-40. (ECF No. 21-9, Recission Letter, PageID 508).

Although Liberty would have the Court interpret the Hoskins Policy and the Bloodwyn Policy to be the same policy, to do so would violate the rules of contract interpretation. Giving the words used in the contracts their ordinary meanings, the contracts are clear: there are two policies with two different policy numbers, for different policy periods, with different coverage limits. The only reasonable

9

interpretation of the two policies is that they are separate agreements. And, even if there were some argument that the provisions of these insurance contracts are susceptible to more than one interpretation, the terms must be strictly interpreted against Liberty and in favor of Plaintiffs. *King*, *supra*.

### 1. Rescission of the Bloodwyn Policy

Liberty's rescission of the Bloodwyn Policy is based on an alleged false statement in the "application" for the "Policy." Having resolved the threshold question of whether there are one or two policies at issue, the Court turns to whether Mr. Bloodwyn made a false statement as part of his application for the Bloodwyn Policy. On this issue, the undisputed facts are:

a. The only application for insurance coverage for the Property signed by Ms. Hoskins and Mr. Bloodwyn reflects policy number H35-281-213275-40 and states that the policy would be effective from October 14, 2014 to October 14, 2015. (ECF No. 21-3, Application, PageID 437-439).

b. The only evidence of an application for Policy Number H35-281-247968-40 is the unsigned application submitted by Plaintiffs. (ECF No. 21-10, Insurance Application, PageID 509-511).

c. Policy Number H35-281-213275-40 was cancelled by Liberty effective February 11, 2015. (ECF No. 21-4, PageID 441).

d. Policy Number H35-281-247968-40 was issued to Mr. Bloodwyn for the policy period of February 11, 2015 to February 11, 2016 and was renewed for the policy period of February 11, 2016 to February 11, 2017. (ECF Nos. 21-6 and 21-7, Policy Declarations, PageID 450-460).

e. Policy Number H35-281-247968-40 makes no reference to Policy Number H35-281-213275-40.

f. Policy Number H35-281-247968-40, in effect from February 11, 2016 to February 11, 2017, contained a warning regarding false statements and incorporated "**[t]he application for *this* policy**. . . . The Insured agrees that all of the statements in **the application for *this* policy** are his or

10

her statements, and constitute warranties." (ECF No. 16-1, Policy, PageID 614 (emphasis added)).

g. The letter from Liberty rescinding the policy references only Policy Number H35-281-247968-40. (ECF No. 21-9, Recission Letter, PageID 508).

h. The Policy that Liberty attached to its Motion for Summary Judgment is the Bloodwyn Policy for policy period February 11, 2016 to February 11, 2017. (ECF No. 16-1, Policy, PageID 577-626).

The Bloodwyn Policy does not incorporate the 2014 Application. Rather, the only incorporation language in the Bloodwyn Policy references "the application for ***this*** policy." (Emphasis added). Looking to the plain and ordinary meaning of "this," which is the word the contract uses as an adjective to describe which policy is being referred to, "this" modifies "the person, thing, or idea that is present or near in place, time, or thought or that has just been mentioned [i.e. this book is mine; early this morning]" or describes the item "being the nearer at hand or more immediately under observation or discussion [i.e. this car or that one]". *This*, Merriam-Webster, https://www.merriam-webster.com/dictionary/this (last visited June 30, 2021). Thus, when the Bloodwyn Policy refers to "the application for this policy," it can only be referring to the Bloodwyn Policy. There is nothing in the Bloodwyn Policy that incorporates the Hoskins Policy or the 2014 Application for the Hoskins Policy. If Liberty intended to incorporate an application for a different policy into the Bloodwyn Policy, it could have said so.

Liberty never addresses this issue with the plain language of the Bloodwyn Policy, instead arguing that it was entitled to rely on "the Application he had already signed and submitted mere months before." (ECF No. 22, PageID 539). It

11

then argues about the "essential" nature of the information provided in an insurance application. (*Id.*) The Court agrees that an insurance application is essential to the insurance company, but even more essential is the language that Liberty chooses to use for its contract with its insured. As previously noted, if Liberty intended for the 2014 Application to be incorporated into the Bloodwyn Policy, it certainly could have said so in the Bloodwyn Policy. It did not. Analyzing Plaintiffs' claim for breach of contract, the Court must construe the language of the contract strictly against the insurer and liberally in favor of the insured. That strict construction leads to the conclusion that Liberty did not have the right to rescind the Bloodwyn Policy.

### 2. Timeliness of this Action

Because Liberty improperly rescinded the Bloodwyn Policy, the Court turns to the terms of the contract. The Bloodwyn Policy contains a "Suit Against Us" provision that provides: "No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss." (ECF No. 16-1, Bloodwyn Policy, PageID 601). Because this action was filed more than one year after the December 2016 fire at the Property, Liberty asserts that this action was untimely filed.

Under Ohio law, an insurance company may lawfully limit the time within which a suit may be brought on a contract of insurance:

> The parties to a contract of insurance may, by a provision inserted in the policy, lawfully limit the time within which suit may be brought thereon, provided the period of limitation fixed be not unreasonable.

12

*Appel v. Cooper Ins. Co.*, 76 Ohio St. 52 (1907), syllabus; *see also Dominish v. Nationwide Insurance Company*, 129 Ohio St.3d 466, 2011-Ohio-4102, 953 N.E.2d 820, ¶ 8. ("The policy states in language clear enough to be plainly understood that any lawsuit by an insured against Nationwide must be commenced within one year of the loss or damage sustained. We conclude that the policy language is not ambiguous."). Likewise, Ohio law has established that a limitation of one year for bringing suit is valid and enforceable. *Walker v. Safeco Ins. Co. of Indiana,* No. 5:17-CV-02214, 2018 WL 8608323, at *2 (N.D. Ohio Aug. 13, 2018) (holding "time limitations on suit contained in an insurance contract are valid and enforceable"); *Kelly v. Travelers Insurance Company*, 9 Ohio App.3d 58, 59, 458 N.E.2d 406, 407 (8th Dist. 1983); *see also Smith v. Aetna Insurance Company*, 6th Dist. Lucas No. L-87-339, 1990 WL 1349, *2 (Jan. 12, 1990) (enforcing provision requiring commencement of suit "within one year after the loss occurs").

In response to Liberty's arguments on this issue, Plaintiffs argue that Liberty "cannot have it both ways," claiming that Liberty cannot argue that the Bloodwyn Policy was rescinded and at the same time seek to enforce the "Suit Against Us" provision. (ECF No. 21, PageID 429). Because the Court has ruled that Liberty did not properly rescind the Bloodwyn Policy, the Policy's provisions are enforceable and all parties are bound by the terms thereof.

Plaintiffs filed suit on November 14, 2019 – almost three years after the date of loss, the December 9, 2016 fire. Thus, Plaintiffs have failed to comply with an express condition of coverage and their breach of contract claim is untimely.

13

Liberty is therefore entitled to summary judgment on this claim. Liberty's Motion for Summary Judgment (ECF No. 16) on this claim is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 21) on this claim is **DENIED**.

### C. Bad Faith Claim

Although the Court grants summary judgment in Liberty's favor on Hoskins's bad faith claim, "Ohio law recognizes that bad faith in the adjustment of an insurance claim may exist without a valid claim for coverage." *Penton Media, Inc. v. Affiliated FM Ins. Co.*, 245 F. App'x 495, 501 (6th Cir. 2007) (citing *Staff Builders, Inc. v. Armstrong*, 37 Ohio St. 3d 298, 525 N.E.2d 783, 788 (Ohio 1988) and *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 1994 Ohio 461, 644 N.E.2d 397 (1994), paragraph 1 of the syllabus). Hence, the Court proceeds to address each side's motion on Hoskins's bad faith claim.

Bad faith involves deliberate wrongdoing with the intent to mislead or breach a known duty; it requires more than the insurer exercising poor judgment or being negligent in the handling of a claim. *See Wasserman v. Buckeye Union Cas. Co.*, 32 Ohio St.2d 69, 73, 290 N.E.2d 837 (1972). "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefor." *Zoppo*, 71 Ohio St.3d 552, syllabus. Bad faith is not shown by a mere breach of a contractual duty. *Helmick v. Republic–Franklin Ins. Co.*, 39 Ohio St.3d 71, 529 N.E.2d 464 (1988), paragraph 2 of the syllabus.

Liberty argues that it is entitled to summary judgment on Plaintiffs' bad faith claim because it was "reasonably justified in rescinding the Policy and not

14

paying Plaintiffs' claim." (ECF No. 16, PageID 285). In so arguing, it submits the Affidavit of Nicholas J. Marrangoni stating that Liberty relied on the 2014 Application in writing the Bloodwyn Policy. (ECF No. 16-1, Marrangoni Aff. ¶ 6, PageID 575). Plaintiffs argue they are entitled to summary judgment on liability for this claim without much elaboration beyond their argument that the 2014 Application was not incorporated into the renewal of the Bloodwyn Policy. (ECF Nos. 21, 23).

Considering Liberty's Motion first, viewing the evidence in the light most favorable to Plaintiff, evidence does exist upon which a reasonable jury could base a finding of bad faith. A jury could determine that Liberty's conduct in ignoring the explicit policy language to rely on a different policy was unreasonable. On the other side, Plaintiffs have not met their burden of proving that the insurer committed some act above breaching the insurance contract. Neither side has shown sufficient undisputed genuine facts that would entitle them to summary judgment. Accordingly, both motions for summary judgment are **DENIED** as to Plaintiffs' bad faith claim. (ECF Nos. 16, 21).

### D. Breach of the Implied Covenant of Good Faith and Fair Dealing Claims and Unfair Trade Practices Claim

Liberty argues that it is entitled to summary judgment on Plaintiffs' claims for Contractual Breach and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing and for Unfair Trade Practices. (ECF No. 16, PageID 285-287). Plaintiffs do not respond to Liberty's arguments on these claims. (*See*, ECF Nos. 21, 23).

"The Sixth Circuit's 'jurisprudence on abandonment of claims is clear: a plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment.'" *Kline v. Mortg. Elec. Sec. Sys.*, 154 F. Supp. 3d 567, 572 (S.D. Ohio 2015) (Rice, J.), aff'd sub nom. *Kline v. Mortg. Elec. Registration Sys., Inc.*, 704 F. App'x 451 (6th Cir. 2017) (quoting *Brown v. VHS of Michigan, Inc.*, 545 Fed. App'x. 368, 372 (6th Cir.2013)). Thus, judgment is hereby **GRANTED** in favor of Liberty on Plaintiffs' claims for Contractual Breach and Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing and for Unfair Trade Practices.

### E. Declaratory Judgment Counterclaim

Liberty's counterclaim seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 that "the Policy provides no coverage for the Claim" because: (1) Liberty properly rendered the Policy void *ab initio* based on Mr. Bloodwyn's false answer to Question 8; (2) Liberty properly rendered the Policy void *ab initio* based on Mr. Bloodwyn's material misrepresentation; and (3) no one timely filed suit against Liberty within the Suit Against Us time period. (ECF No. 4, ¶ ¶ 31-35, PageID 47). Plaintiffs move for summary judgment on this count. (ECF No. 21).

The Court holds above that the alleged material representation did not relate to the Bloodwyn Policy, so ground one is insufficient. Ground two fails for the same reason. And while ground three is valid, it does not operate to bar Plaintiffs' bad faith breach of contract claim. Accordingly, Plaintiff's Motion for Summary

16

Judgment (ECF No. 21) on Liberty's declaratory judgment counterclaim is **GRANTED**.

## III. CONCLUSION

For the reasons set forth above, Liberty's Motion for Summary Judgment (ECF No. 16) is **GRANTED** in part and **DENIED** in part. Plaintiffs' Cross Motion for Summary Judgment is (ECF No. 21) is **GRANTED** in part and **DENIED** in part. Liberty is hereby granted judgment on Plaintiffs' claims for Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing, Tortious Breach of the Implied Covenant of Good Faith and Fair Dealing, and Unfair Trade Practices. Plaintiffs' claim for bad faith remains for trial.

**IT IS SO ORDERED.**

s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**